## Larison *against* Burt.

A vendor of land, who has performed so much of his part of the agreement that he cannot be put in *statu quo*, and there is no default on his part in performing the residue, or he is prevented from completing it by the default of the vendee, is entitled to specific performance.

Where the case requires it, specific performance of an agreement for the sale of land may be enforced by means of a conditional verdict in an action of ejectment.

ERROR to the Common Pleas of *Tioga* county.

David Burt against John Larison. This was an action of ejectment for 75 acres of land. The plaintiff and the defendant had been disputing about their rights to land. Burt, on the 10th April 1832, had bound himself to Larison to make a title to Larison and one Updike, respectively, of 100 acres each. Proceedings were after this had before the Board of Property, on a *caveat*, in relation to this and adjacent land, and Burt succeeded. Larison appealed by bringing an ejectment to December 1836. Whilst this suit was pending, the parties, on the 20th September 1837, entered into an agreement in writing for terminating their differences, by which judgment was to be entered for the plaintiff Larison, and an adjustment was made as to their respective costs of suit. It was further agreed that Larison should release to Burt the 75 acres demanded in the present ejectment, for which, with part of the 200 acres above-mentioned, Larison was to take out a patent from the commonwealth, having included all this in his application and survey. On the other hand, Burt agreed to convey a good and sufficient title to Larison for the residue of the 200 acres not included in Larison's survey, amounting to 55 acres. The conveyances were to be simultaneous; and it was then agreed, that " the parties are each forthwith to have possession of the land, agreeably to the foregoing arrangement." Burt, having in December 1840 tendered a deed to the defendant for the 55 acres, demanded a conveyance of the 75 acres; which the defendant refused. He alleged, and it was contended here, that Burt was not entitled to recover the 75 acres, because a quantity of valuable timber had been cut off from the 55 acres, after the agreement of 20th September 1837, by which the value of the land had been materially diminished, and so the plaintiff could not make him such a good and sufficient title as he agreed to make and was bound to make. And this was the question on this writ of error.

It did not distinctly appear in the evidence, when this timber was cut off; whether previous to the agreement of September

1837 or afterwards, though it was before December 1840. As far as can be collected from the obscure accounts given of it, the greater part of the cutting was done before or about the time of the agreement; but there was some evidence to show that a portion was afterwards done. Evidence was given by the defendant that one Freeman Burnham was in possession for a year after the agreement, claiming as an actual settler; but on that subject there was contradictory evidence. His claim, however, if he had any, was extinguished by Burt's purchasing it from him; so that long before December 1840, Burt would seem to have had a good and sufficient title. Nor was there any evidence to show who it was cut down the trees; it appears to have been done by unknown persons; but was in no manner traced to either of the parties in this suit.

Conyngham, President, referred the facts of the case to the jury, with instructions that he did not perceive any legal or equitable principle of law which should prevent the plaintiff's recovery.

*Williston*, for plaintiff in error, argued that the plaintiff had not made title to the 55 acres to Larison, so as to give him the control and care of the land until it had been destroyed. Burnham, an actual settler, was suffered to remain in possession until he had cut the timber off, and then, after the lapse of three years, the plaintiff asks specific performance. This would be inequitable. 1 *Mad. Ch.* 418, 430. At all events, the defendant should have been compensated for the loss by means of a conditional verdict. 9 *Johns.* 450; *Sugd. Vend.* 150, 162, 186.

*Case, contra.* The destruction of the timber was because of the default of the defendant: by the agreement he had full power to take possession and protect the land from trespassers. The plaintiff bound himself to make the title; this he did do, and tendered it before suit brought. 2 *Watts* 427; 5 *Watts* 259.

The opinion of the Court was delivered by

Sergeant, J.—Under the circumstances of this case, the principle of equity is, that although a plaintiff who has failed to perform his part of the agreement, or where it has become impossible for him to perform it, cannot insist on a specific performance by the defendant, yet, if he has performed so much of his part of the agreement that he cannot be put in *statu quo*, and there is no default in not performing the residue, or he is prevented from completing it by the default of the defendant, he is entitled to specific performance. *Ch. Cas.* 26; *Finch* 445; 2 *Ch. Cas.* 18, 19; *Prec. Ch.* 312; *Gilb. Rep.* 70, cited 1 *Mad. Ch.* 218. In the case before us these points seem to concur. Burt has given Larison judgment in the ejectment. He has enabled Larison to obtain a title, and to hold rightful possession of 145 acres, part of the 200 acres formerly

[Larison v. Burt.]

in dispute, and for which Burt had obtained a decision in his favour before the board of property; besides which, Larison has enjoyed the 75 acres now demanded. It is impossible now to put things in the state they were in before the agreement of the 20th September 1837; and to rescind the contract without doing so, would, independent of other circumstances, be highly inequitable.

Then, again, it is to be inquired, by whose default it was that the timber was cut off? It is clear, it was not the act of the plaintiff, as none of it appears to have been cut by him or with his knowledge or consent. If any default, in this respect, is chargeable on either of these parties, it is imputable rather to Larison than to Burt; for by the express tenor of the agreement, Larison was entitled to have the possession of these 55 acres forthwith, after the agreement was made; but it does not appear that he ever demanded possession, or looked after his property. He chose to lie by for three years, and let it take care of itself. Had Larison called on Burt for possession of his 55 acres, and had Burt, without cause, refused it, there might have been some colour for throwing the blame of any loss, afterwards occasioned by marauders, on Burt. As Larison never did this, Burt can be considered, at the utmost, as his bailiff or steward, or in nature of a guardian, holding the land in right of Larison, bound to bestow ordinary care and diligence in taking care of the land, but not answerable for trespasses committed by third persons, strangers, without his knowledge or privity. A guardian is not punished in waste, for waste done by a stranger. *Fitz. N. B.* 60; *Bac. Ab., tit. Waste.* Nor is a tenant at will answerable even for permissive waste. *Ibid.* I do not perceive, under these circumstances, that the defendant can justly complain of the plaintiff, of whom he never demanded the possession, or a deed, or took any steps towards carrying out the stipulations of the agreement by which he was to have the possession immediately, and a title at a convenient time.

But it is said, that if specific performance is to be enforced by this ejectment, the defendant should be allowed compensation for the value of the timber-trees cut; and that this should have been done by means of a conditional verdict. In a proper case, certainly, under our practice, compensation might be allowed in ejectment, by a verdict for the plaintiff, subject to the condition of his not enforcing the judgment till he had paid a certain sum of money, ascertained by the jury. But for the reasons I have given, I am by no means clear in my opinion that this is a case in which a chancellor would decree compensation. It is sufficient, however, to say, that the defendant below did not ask compensation. He resisted the plaintiff's recovery *in toto*, and required a verdict in his favour on the facts in evidence. Upon the case as presented to the court below, and here, we think there is no error in the charge of the court on record.

　　　　　　　　　　　　　　　　　Judgment affirmed.